**Ex parte Ernest J. BROWNE, Sr., et al.**

**No. B–5937.**

Supreme Court of Texas.

Oct. 27, 1976.

Rehearing Denied Dec. 1, 1976.

Adams & Browne, Gilbert T. Adams, Beaumont, for relators.

Mehaffy, Weber, Keith & Gonsoulin, Robert Q. Keith, Beaumont, for respondent.

POPE, Justice.

Ernest J. Browne, Sr. and Robert Thomas were held in contempt for the violation of an injunction order of the 60th Judicial District Court of Jefferson County. Each was fined $100.00 by the special judge assigned to hear the contempt complaint and upon their refusal to pay the fines, they were taken into custody by the sheriff. This court ordered their release pending our decision in this habeas corpus proceeding. The questions presented are whether Mr. Browne and Mr. Thomas in fact violated the order of the court, whether the order itself was a void one, and whether the relators were accorded due process. We hold that Mr. Browne violated the order, that it was not void, and he was accorded due process. There was no proof that Mr. Thomas violated the order.

On April 18, 1975, Gloria Austin filed a suit in the 60th Judicial District Court against Robert Thomas. She alleged that she had employed Thomas as her attorney in a divorce action but that the contract should be canceled and she should be awarded damages for breach of a fiduciary relationship. That cause was set for trial on October 6, 1975.

On September 5, 1975, John Paul Crain and A. H. Crain filed a separate suit in the 58th Judicial District Court naming as defendants, Gloria Austin, her husband H. E. Austin, Robert Thomas, H. E. Investments and the Texas Bank of Beaumont. That was an interpleader suit by which the Crains sought to tender into court the sum of money they owed on a note secured by

property in which the Austins and others had some interest. As security for the payment of his fee in the divorce case, Thomas had taken a collateral assignment of the note. The purpose of the Crain suit was to assure the timely payment of their obligation so they would be protected against the conflicting claims to the funds which might be asserted by the Austins, Thomas, and the other defendants. They also asked for an order to invest the funds properly pending the litigation.

On September 18, 1975, Browne, as attorney for Thomas, filed in the Crain case that was pending in the 58th District Court a motion to consolidate the prior Austin case that was pending in the 60th Judicial District Court. The motion was set for hearing on September 30. At that time neither Gloria Austin nor Thomas had yet been served with process as defendants in the Crain case which had been filed after the Austin suit.

On September 26, Gloria Austin filed in the 60th District Court her petition for injunction seeking to prohibit Thomas from taking action to consolidate the Austin case with the Crain case. On September 29, the judge of the 60th District Court granted an injunction in the Austin case which prohibited Thomas from:

(a) taking any steps whatsoever to consolidate the captioned cause into Cause No. A–102,383 in the 58th District Court of Jefferson County, Texas

(b) taking any step whatsoever to oust this Court of its lawful jurisdiction in the cause of *Austin v. Thomas,* No. B–101,640.

On September 29, Thomas gave notice of appeal and filed his appeal bond, but he did not file the record in the court of civil appeals until October 20. On September 30, relator Browne appeared at the consolidation hearing and explained to the judge of the 58th District Court that his client, Mr. Thomas, had been enjoined. The special judge who heard this contempt matter found as a fact, however, that relator Browne did something more; he voiced his views and opinions about the merits of the motion to consolidate and told the court that the motion to consolidate was a good one after which the judge of the 58th District Court ordered the consolidation of the Austin case with the Crain case. Thereafter all parties agreed to a settlement of both suits. The Crain case was settled and judgment was rendered by the 58th District Court, but the Austin case remained pending on the docket of the 60th District Court. In January these contempt proceedings were instituted upon the complaint that Browne and Thomas had violated the order. The record in this contempt proceeding supports the trial judge's finding that relator Browne violated the order against taking steps to consolidate the two cases or to oust the 60th Judicial District Court of its prior jurisdiction over the first-filed cause.[1]

---

1. The record made at the contempt hearing shows that Mr. Browne appeared at the consolidation hearing and argued:

"Now, in my personal opinion, I think that the order is void. I don't think where one court sets something for a hearing, I don't think another court, unless it's the appellate court, can in effect enjoin that hearing— Your Honor, I owe a duty to my client, Robert Thomas to not be doing anything to place him in jeopardy. I think, as far as the power of the Court, my personal opinion, I think that everybody knows the law, the courts can consolidate cases on their own motion. I can point out similarities and so forth, instances, and so forth, but I don't want to do anything that would place my client in jeopardy, Your Honor or being held in contempt of court

because he comes down here to this court to urge a motion that he has filed in this court in good faith, and this court has set it for a hearing, in good faith, and I don't know of anybody that has filed any objections to the consolidation. It's my understanding that they are all in favor of the consolidation, except maybe Mr. Keith's client."

\* \* \* \* \* \*

In answer to a question from the judge about the applicability of Rule 174(a) to the consolidation question, Mr. Browne responded:

". . . I have to agree that is the Rule, and I think it's applicable, but I'll say to the Court I do not want to be in position of endangering my client, Robert Thomas, because he is enjoined from urging his motion to consolidate. No one has filed any objec-

■ Relator Browne was bound by the injunction as the attorney for Mr. Thomas. Rule 683. There was no proof, however, that Thomas himself did anything to violate the order. He did not appear or participate in the hearing; he gave no instructions to his attorney.

■ The injunction order was not a void one. The 60th Judicial District's jurisdiction over the Austin case ordinarily could have been protected by filing a plea to abate any subsequently filed suit between the same parties concerning the same subject matter. *Lancaster v. Lancaster,* 155 Tex. 528, 291 S.W.2d 303 (1956); *Powers v. Temple Trust Co.,* 124 Tex. 440, 78 S.W.2d 951 (1935); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (1926).

■ Our decision in *Lancaster,* as well as the several precedents discussed in that case, show, however, that a court may protect its jurisdiction by injunction when there is no adequate remedy available such as a plea to abate the second-filed case and when special circumstances justify the injunction. 6 Texas Practice, *Remedies,* § 75 at p. 119 (1973). It is our opinion that those circumstances exist in this case.

■ The Austin case had been on file in the 60th Judicial District since April, 1975, some four and one-half months before the Crain case was filed. Extensive discovery proceedings prior to trial had been completed in the Austin case, and it was set for trial for October 6. The Austin case was one in which Gloria Austin was the only plaintiff and Thomas was the only defendant. It was a suit grounded upon breach of a fiduciary relationship and sought the cancellation of a contract and damages. The Crain case, on the other hand, was an interpleader action. There was no issuance of citation in that case until after the hearing on the motion to consolidate. Mrs. Austin was dismissed from the Crain case as a party prior to the consolidation hearing, so at that time, she was the only plaintiff in the action pending in the 60th District Court and she was not a party to the interpleader action pending in the 58th Judicial District. Robert Thomas was the only party common to both actions. The subject matter in the two actions was wholly different, the parties were different and the remedies were different, so a plea in abatement by reason of a prior pending action would not lie. *See Gratehouse v. Gratehouse,* 417 S.W.2d 592 (Tex.Civ.App.1967, no writ).

■ The purpose of the injunction by the 60th Judicial District Court was to avoid the disruption of the setting and trial of the Austin case. The order in no way interfered with the trial of the Crain case, since the injunction was addressed to Thomas and not to the 58th District Court. *See* 43 C.J.S. Injunctions § 50. We hold that the injunction by the first court was not a void act because the first court had the power to protect its jurisdiction from disruption by a later-filed suit between different parties, concerning different subject matter. Art. 1911a, Tex.Rev.Stat.Ann. (Supp.1975). To excuse relator Browne's violation of the order, he had to prove that the order was absolutely void, not that it was merely invalid. *Ex parte Kimberlin,* 126 Tex. 60, 86 S.W.2d 717 (1935); *Ex parte Olson,* 111 Tex. 601, 243 S.W. 773 (1922); *Ex parte Smith,* 110 Tex. 55, 214 S.W. 320 (1919). In our

---

tions and this is a court of record and if anybody is going to object to it, they should file a plea and there haven't been any filed. So I think it should be taken as true, and it should be entered, and I don't want to take the position of my client violating Judge Combs' order."

There was then extended colloquy between the court and counsel for Mrs. Austin. This included discussions about Rule 174 concerning consolidations, the posture of the parties in the two suits which disclosed that Thomas was the only party common to both actions at the time of the consolidation hearing, the local rule which called for consolidations to be made in the first-filed cause instead of the last-filed one, Rule 330(e), Rule 43 concerning interpleaders, cases construing the interpleader rule. At the conclusion of that discussion, counsel for Mrs. Austin stated that Mr. Browne's presentation and discussion of the motion to consolidate "constitutes a direct violation of the injunction that was issued yesterday." To that comment, Mr. Browne responded, "You mean by discussing the law?"

opinion, relator has not shown that the order was void.

▮ Relator Browne makes the further contention that he was denied due process, because the injunctive order was vague and uncertain. We think otherwise. In *Ex parte Slavin,* 412 S.W.2d 43 (Tex.1967), we wrote that "the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." The order, which enjoined "taking any steps whatsoever to consolidate the captioned cause into" the 58th District Court clearly prohibited relator Browne from making arguments before the 58th District Court that the motion to consolidate should be granted.

▮ Relator Browne makes the further argument that he was denied due process since Rule 692 limits contempt actions to violations of orders in pending cases and this case was settled long prior to the commencement of the contempt action. Mootness of the merits does not wash away one's prior contemptuous conduct toward the court. *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 451–452, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

▮ The power to punish for contempt is an inherent power of a court. It is an essential element of judicial independence and authority. As expressed in *Gompers, supra,* "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent . . . ." *Gompers, supra,* was a case in which there was a contemptuous act followed by a settlement of the entire cause. The Supreme Court stated:

> When the main case was settled, every proceeding which was dependent on it, or a part of it, was also necessarily settled—of course, without prejudice to the power and right of the court to punish for contempt by proper proceedings. *Worden v. Searls,* 121 U.S. [14] 27, 7 S.Ct. 814, 30 L.Ed. [853] 858. If this had been a separate and independent proceeding at law

for criminal contempt, to vindicate the authority of the court, with the public on one side and the defendants on the other, it could not, in any way, have been affected by any settlement which the parties to the equity cause made in their private litigation.

▮ Finally, we find no merit in relators' contention that the trial court lost jurisdiction to proceed by way of contempt because the appeal from the trial court ousted the trial court of jurisdiction over the contempt. The chronology of relevant events was: On September 29, the 60th Judicial District Court made its injunction order. On that same date Thomas gave notice of appeal and filed his appeal bond. On September 30, relator Browne did the acts which the trial court found were contemptuous. On October 20, Thomas filed the transcript with the court of civil appeals, and on November 4, that court dismissed the appeal upon motion of appellant, Thomas. In *Ex parte Werblud,* 536 S.W.2d 542 (Tex.1976), we held that the court of civil appeals is the one charged with the trial and disposition of contempt proceedings for violations of orders during an appeal to that court. This court has also held, however, that jurisdiction over interlocutory orders was not vested in the court of civil appeals until (a) an appeal bond was filed and (b) the record was timely filed. *Houston Compressed Steel Corp. v. State,* 456 S.W.2d 768, 772–773 (Tex.Civ.App.1970, no writ); *Walker v. Cleere,* 141 Tex. 550, 174 S.W.2d 956 (1943); Rule 385, Tex.R. Civ.P. The trial court had jurisdiction of this case when the injunction order was violated on September 30; it had jurisdiction after the appeal was dismissed and the contempt action was tried.

Relator Ernest J. Browne, Sr. is remanded to the custody of the Sheriff of Jefferson County. It is ordered that the order holding relator Robert Thomas in contempt be set aside and that he be discharged.

Dissenting Opinion by DANIEL, J., joined by McGEE and DENTON, JJ.

DANIEL, Justice (dissenting).

I concur in that part of this Court's judgment discharging the relator, Robert Thomas. I would enter the same judgment of discharge as to Robert Thomas' attorney, Ernest J. Browne, Sr., and therefore dissent from that portion of the Court's opinion and judgment which reaches a contrary result as to him.

The injunction of the 60th District Court, which was alleged by the complainant (Mrs. Austin's attorney) to have been violated, named only Thomas. He was enjoined from "taking any steps whatsoever" to consolidate the Austin case pending in the 60th District Court with the Crain case pending in the 58th District Court, or to oust the 60th Court of its jurisdiction in the Austin case. Browne was bound thereby only as Thomas' attorney by reason of Rule 683, Texas Rules of Civil Procedure.

Whether the injunction was valid or invalid, it cannot be denied that Thomas and Browne had a right to appeal therefrom before being charged by opposing counsel with a disobedience under Rule 692, Texas Rules of Civil Procedure. Any denial of that right would be a denial of due process.[1] On the same day the injunction was entered by the 60th Court, September 29, 1975, Thomas and Browne gave notice of appeal from the injunction and filed an appeal bond. The transcript was duly filed with the Court of Civil Appeals on October 20, 1975.

In the meantime, while the appeal from the injunction was pending, all parties made a complete settlement of both lawsuits shortly before October 31, 1975, evidenced by written memoranda and agreed judgments to be entered in each case. The settlement provided that, in consideration of Mrs. Austin taking a nonsuit or a "take nothing" judgment in the 60th Court and paying Thomas a cash settlement, the parties would mutually release each other of all claims pending in both cases. The $154,-000 and accrued interest in the registry of the 58th Court was to be awarded by judgment of that court to H. E. Investments, less certain attorney fees awarded to the attorney for the Crains, whose property was to be released from all liens. Judgments carrying out the settlement were prepared and signed by the attorneys for all parties on or about October 31, 1975, with the attorneys for Mrs. Austin agreeing to get the judgments signed by the respective courts. The 58th Court judgment was signed on October 31, 1975, and the 60th Court judgment was delivered by the Austin attorneys to the judge of that court on or about the same date. Whereupon, the appeal from the injunction of the 60th Court was dismissed by Thomas and Browne on November 4 as being moot.

It was not until nearly three months later that Thomas and Browne learned that the final judgment had not been signed by the 60th Court prior to the dismissal of their appeal from the injunction. This knowledge came when they were served with a show cause order issued upon a complaint filed by Mrs. Austin's attorney on January 20, 1976, asserting that on September 30th Thomas and Browne had violated the 60th Court's injunction of September 29, 1975. The complaint was filed by the same attorney whose responsibility it was for having the final judgment signed by the 60th Court on or about October 31, 1975.

Relators contend they were denied due process when Mrs. Austin's attorney failed

1. This is true regardless of the merits of the appeal. It should be observed, however, that relators' appeal was not frivolous. From the record in this proceeding it is apparent that Mrs. Austin had neither allegations nor proof that she had resorted or attempted to resort to any remedy at law or that such remedy would be inadequate, all of which is essential in this type of injunction suit. *Lancaster v. Lancaster,* 155 Tex. 528, 291 S.W.2d 303 (1956); *Powers v. Temple Trust Co.,* 124 Tex. 440, 78 S.W.2d 951 (1935). The judge of the 60th Court testified that he recommended to Mrs. Austin's attorney that he not file the injunction because of local rules by which the consolidation in the 58th Court could be avoided. The existence of that adequate remedy was effectively demonstrated on the day after the consolidation, when the presiding judge of the Jefferson County District Courts set aside the consolidation order and restored the Austin case to the 60th Court.

to obtain entry of the final judgment in the 60th Court as agreed upon and waited until after relators had dismissed their appeal from the injunction before advising relators that the judgment had not been signed. Under the circumstances, I agree that this argument has merit insofar as the parties and their attorneys are concerned. This contempt proceeding was not initiated by the judge of the 60th District Court under his general power to punish for contempt. Rather, the complaint in this proceeding was filed by Mrs. Austin's attorney under Rule 692, which applies to injunctions in *pending cases*. If the final judgment had been entered as agreed upon on or about October 31, 1975, there would have been no case, controversy, or ancillary injunction pending in the 60th Court when the complaint was filed against relators on January 20, 1976. It was stipulated by the parties that relators' appeal from the injunction was dismissed because of the settlement. Mrs. Austin's attorney testified: "We contemplated a take nothing judgment would be entered by Judge Combs [60th Court] . . . .. I presented, directly or indirectly, that proposed judgment to Judge Combs . . . on or about November 1, 1975." Judge Combs testified that he would have signed the judgment if he had been asked to do so.[2] Failure of complainant to ask for the judgment to be signed, or to notify relators that it was not signed, prior to relators' dismissal of their appeal from the injunction obviously resulted in a denial to relators of the due process of law to which they were entitled both as to their appeal and the contempt proceeding.

While circumstances of this nature resulting from a settlement by the parties may not prejudice the power and right of a court to initiate its own independent proceeding for criminal contempt, they should positively foreclose and estop the parties to the settlement and their attorneys from initiating a contempt proceeding for their own

vindication or punishment of the opposing parties. This was the effect of the holding in *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911), which is cited by the majority. In that case the Court held that as far as the parties were concerned, settlement of the main case necessarily settled every proceeding which was dependent on it, stating:

" . . . when the main cause was terminated by a settlement of all differences between the parties, the complainant did not require, and was not entitled to, any compensation or relief of any other character. The present proceeding [contempt] necessarily ended with the settlement of the main cause of which it is a part. *Bessette v. W. B. Conkey Co.*, 194 U.S. [324] 328, 333, 24 S.Ct. 665, 48 L.Ed. [997] 1002, 1004; *Worden v. Searls*, 121 U.S. [14] 27, 7 S.Ct. 814, 30 L.Ed. [853] 858; *State v. Nathans*, 49 S.C. [199] 207, 27 S.E. 52. The criminal sentences imposed in the civil case, therefore, should be set aside." (Pp. 451–452, 31 S.Ct. at 502.)

Relators also assert that there was a lack of due process because the affidavit and show cause order did not describe or notify them of the specific acts of contempt on which they were to be tried. The affidavit and the subsequent show cause order merely alleged that "in disobedience of such temporary injunction, at 1:30 o'clock p. m., on September 30, 1975, the said Ernest J. Browne and Robert L. Thomas appeared for and on behalf of the Motion to Consolidate the two cases into the case pending in the 58th District Court . . . .." This complaint was wholly insufficient to constitute a basis on which to predicate a prosecution for contempt based upon disobedience of the terms of injunction. The injunction did not enjoin Thomas or Browne from appearing at the hearing on the motion to consolidate.[3] It prohibited only the taking of any

---

**2.** He explained his failure to sign it as follows: "One reason I did not know what effect it might have on the show cause to hold in contempt. However, regardless of that facet, I would have gone ahead and signed it had any-

one talked to me about it and told me that it was holding up anything, or that anyone was concerned about it."

**3.** Mrs. Austin's application for injunction had an additional prayer that Thomas be restrained

future steps to consolidate the causes. No such steps constituting disobedience of the injunction were specifically described in the complaining affidavit as provided in Rule 692. The affidavit that Thomas and Browne "appeared for and on behalf" of the motion to consolidate was a mere conclusion. It failed to specify how or by what means, either in words or actions, that relators had disobeyed the terms of the injunction.

Constructive contempt being in the nature of a criminal proceeding, it has been repeatedly held that due process demands notice of the specific violation charged. In holding a contempt judgment void in *Ex Parte Edgerly,* 441 S.W.2d 514 (Tex.1969), this Court said:

"  .  .  .  Due process of law demands that before a Court can punish for a contempt not committed in its presence, the accused must have full and complete notification of the subject matter, and the show cause order or other means of notification must state when, how and by what means the defendant has been guilty of the alleged contempt. 12 Tex. Jur.2d Contempt § 48 (1960). See also *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406, 57 A.L.R. 541 (1928); *Ex parte White,* 149 Tex. 155, 229 S.W.2d 1002 (1950); *Ex parte Winfree,* 153 Tex. 12, 263 S.W.2d 154, 41 A.L.R.2d 1259 (1954); *Ex parte Hardin,* 161 Tex. 567, 344 S.W.2d 152 (1961); *Ex parte Cardwell,* 416 S.W.2d 382 (Tex.Sup.1967).  .  .  . "

Since the affidavit and show cause order did not describe or specify the actions or words for which relator Browne has been held in contempt, they did not afford him the due process to which he was entitled under Rule 692 and the above cited authorities.

Accordingly, I would hold the contempt order invalid and discharge both of the relators.

McGEE and DENTON, JJ., join.

"from proceeding with a Motion to Consolidate, or consenting to the consolidation .  .  .  .", but this portion of her prayer was

not included in the injunction as issued by the 60th Court.